**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| **KATHRYN BLUES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No.: _____ |
| | ) |
| **ELI LILLY AND COMPANY,** | ) **JURY TRIAL REQUESTED** |
| (Serve Registered Agent: | ) |
|   National Registered Agents, Inc. | ) |
|   300-B East High Street | ) |
|   Jefferson City, MO 65101), | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff Kathryn Blues, for her Complaint against Defendant Eli Lilly and Company (Defendant), states the following:

### ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff Kathryn Blues is a resident of Overland Park, Johnson County, Kansas.

2. Defendant Eli Lilly and Co. is a foreign corporation, incorporated in the state of Indiana and doing business in Kansas City, Jackson County, Missouri.

3. Plaintiff worked as a pharmaceutical representative for Defendant in the Kansas City Missouri area from May 7, 2001 until her termination by Defendant on September 11, 2002.

4. The events which form the basis of this Complaint occurred while Plaintiff was employed by Defendant while working in Jackson, Buchanan, Platte and Clay Counties in Missouri and additional counties in both Kansas and Nebraska.

5. Plaintiff asserts these claims pursuant 28 U.S.C. § 1331. Venue is proper because many of the acts occurred in the Western District of Missouri, Western Division and Defendant conducts a substantial amount of business in the Western District of Missouri.

6. Plaintiff was hired to market a drug awaiting FDA approval for osteoporosis called PTH (or "para-thyroid hormone"), with a brand name of Forteo. In addition, Plaintiff did market another drug called Evista.

7. In the Summer of 2001, Defendant, through its supervisor, Peter Rizk, ordered Plaintiff to engage in what Defendant called an "Early Experience Program." Rizk gave instructions individually to Plaintiff and to Plaintiff and other sales representatives on conference calls, with the approval of Defendant's marketing department.

8. In these conference calls, Rizk acknowledged problems with marketing the drug before FDA approval by making statements such as, "Be careful, Big Brother is watching" and acknowledging that Defendant was "pushing the envelope."

9. The "Early Experience Program" of Defendant was a plan for pharmaceutical sales representatives to call on at least ten physician specialists and request the physicians to name in writing at least ten of the physician's patients who would be candidates to receive the drug for one month for free before the drug was available in pharmacies and generate 100 prescriptions of Forteo before the launch.

10. Defendant instructed Plaintiff to market this drug without FDA approval, with no published indications for use or side effects, and without any pricing information.

11. PTH (Forteo) had not been approved as a drug by the Food and Drug Administration in 2001. The FDA approval was granted on November 26, 2002 with a "black box" warning.

2

12. In or around August 2001, Plaintiff complained to her supervisor about her concerns about the legality of marketing PTH and requesting physician commitments before FDA approval.

13. After Plaintiff's complaint to her supervisor, Defendant began a course of retaliation against Plaintiff because of her reluctance and refusal to violate the law by marketing a drug without FDA approval.

14. Rizk became critical of Plaintiff's work and in December 2001 began giving her written reprimands claiming Plaintiff's performance had declined. Before Plaintiff complained about the "Early Experience Program," she received good performance evaluations and sales for Evista continued to be strong.

15. Beginning in December 2001, Plaintiff complained about the retaliation to Defendant's Human Resources Department in Indiana, to no avail.

16. Beginning as early as December 2001 and through the time Defendant actually terminated Plaintiff on September 11, 2002, Defendant "suggested" to Plaintiff that Plaintiff resign from employment with Defendant.

17. In January 2002, Rizk rode with Plaintiff on her sales calls in Missouri and Kansas and gave her another review stating her performance was below expectations.

18. Throughout 2002, up until Plaintiff's termination, Defendant continued its retaliation.

19. Plaintiff's Evista sales continued to be above 92%, even as high as 96%.

20. Plaintiff was written up by Defendant for not building customer relationships and product knowledge.

21. Defendant continued to build a file in order to terminate Plaintiff without appearing to terminate her for her refusal to violate the law and for her complaints about violation of the law.

22. On September 11, 2002, Defendant terminated Plaintiff's employment with Defendant.

23. Defendant's actions were willful, malicious or in reckless disregard of Plaintiff's rights.

24. Plaintiff has suffered loss of wages and benefits, loss of future wages and benefits, mental anguish, pain and suffering, embarrassment, humiliation, damage to her reputation, lack of employability in comparable positions, loss of confidence, and loss of the enjoyment of life.

## COUNT I - WRONGFUL TERMINATION IN MISSOURI

25. Plaintiff hereby incorporates those allegations contained in paragraphs 1 through 24 into Count I of her Complaint.

26. Plaintiff was retaliated against and discharged because she complained of and refused to violate public policy, specifically regarding Defendant's unlawfully marketing a drug which had not yet been approved by the Food and Drug Administration in compliance with the regulations of the Food and Drug Administration, 21 USC Sec. 355, ff, 9 CFR Sec. 21 ff.

27. Defendant retaliated against Plaintiff because she warned them that its practices violated public policy and the law.

28. Plaintiff employee reported to her superiors serious misconduct that constitutes violations of the law and of such well established and clearly mandated public policy.

29. As a direct result of Defendant's discriminatory actions alleged herein, Plaintiff suffered and will continue to suffer emotional distress, humiliation, embarrassment, loss of the enjoyment of life, pain and suffering, and loss of pay and benefits, both past and future.

30. Defendant's conduct was willful, malicious and in conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual damages, compensatory damages, punitive damages, front pay, reinstatement, attorneys' fees, costs, and such other equitable and other relief that the Court deems appropriate.

## COUNT II - WRONGFUL TERMINATION IN KANSAS

31. Plaintiff hereby incorporates those allegations contained in paragraphs 1 through 30 into Count II of her Complaint.

32. Defendant was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare.

33. The Defendant had knowledge of Plaintiff's reporting of such violation prior to discharge of Plaintiff.

34. Plaintiff was discharged and retaliated against in retaliation for making the report.

35. As a direct result of Defendant's discriminatory actions alleged herein, Plaintiff suffered and will continue to suffer emotional distress, humiliation, embarrassment, loss of the enjoyment of life, pain and suffering, and loss of pay and benefits, both past and future.

36. Defendant's conduct was willful, malicious and in conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual damages, compensatory damages, punitive damages, front pay, reinstatement, attorneys' fees, costs, and such other equitable and other relief that the Court deems appropriate.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all Counts and all allegations contained herein.

**BRATCHER & GOCKEL, L.C.**

By    s/Lynne Jaben Bratcher
      Lynne Jaben Bratcher, MO Bar #: 31203
      Marie L. Gockel, MO Bar #: 31208
      1610 City Center Square
      1100 Main Street
      P.O. Box 26156
      Kansas City, MO 64196-6156
      PH:   (816) 221-1614
      FAX: (816) 421-5910

**ATTORNEYS FOR PLAINTIFF**

6

Case 4:03-cv-00059-ODS   Document 1   Filed 01/23/03   Page 6 of 6